(b) That such rents are not exempt from such tax by reason of pre-emption by the state of Ohio and the right to tax plaintiff;

(c) That such rents are not expressly or otherwise exempt from such tax by the statutes of the state of Ohio;

(d) That such rents are not exempt from such tax by virtue of the Constitution of the state of Ohio; and

(e) That such rents are not exempted from such tax by implication of the statutes and laws of the state of Ohio.

This court is of the further opinion that the prayer of the plaintiff for a permanent injunction against the enforcement of the Columbus income tax be, and the same hereby is, denied.

*Judgment accordingly.*

PETREE, P. J., and MILLER, J., concur.

DALIE, APPELLEE, *v.* SOWERS, APPELLANT.

368

(No. 150—Decided March 25, 1959.)

Messrs. *Gibbs & Gibbs,* for appellee.
Messrs. *Durfey, Martin, Browne & Hull* and *Mr. John O. Harper,* for appellant.

CRAWFORD, J.  Defendant appeals on questions of law from a judgment of $1,366 recovered by plaintiff for personal injuries sustained in a fall while going out a doorway at defendant's place of business.

Defendant was the occupant and lessee of premises at 219 North Locust Street in the city of Urbana, where he operated a poultry and egg business.  His place of business fronted toward the west upon Locust Street.  There were two front doors, both facing west, one being referred to as the south door and the other as the north door.  On December 23, 1953, plaintiff parked his truck in an open space north of the building occupied by defendant and entered the latter's premises for the purpose of obtaining some dressed chickens in order to deliver them to the American Legion for distribution among the needy.  The order numbered approximately 35 chickens, weighing from three to

four pounds each, which were placed in three bushel baskets by defendant or his employees.

As plaintiff started to carry out one of these baskets, someone in defendant's establishment, apparently Mrs. Sowers, opened the north door for him. He proceeded out through this door because it was nearer his truck, and his basket of chickens was quite heavy. He carried the basket in front of him. He was unable to see the step ahead, but felt for it with his foot. As he was stepping down from the doorsill he fell and broke his heel.

He testified that before the trial he took measurements at the north door and found that the doorsill was 17 inches above the sidewalk and 14 inches above the first, and apparently the only, step intervening between the doorsill and the sidewalk. He described this step as "eight inches wide." This measurement apparently signifies the width of the tread. Otherwise it could refer only to the lateral dimension, which hardly seems probable. In either case, the condition thus described would appear to be hazardous, as well as permanent.

Mrs. Sowers testified, "I think it was the second or third basket" that plaintiff was carrying out when she opened the door for him and he fell. She also said her recollection was that he first entered the place that evening by the north door.

Plaintiff testified that this was the first basket he had carried out. He said that on previous visits to defendant's establishment he had always used the south door, had never before used the north door to go either in or out, and had entered by the south door on this occasion.

Eleven jurors signed the verdict for the plaintiff. All 12 answered three special interrogatories requested by defendant, to the effect that plaintiff had not passed over the steps at the north door on other trips immediately before the one in which he fell, that he had no knowledge of the condition of the step at the time he fell, and that he did not look to see where he was stepping.

The charge of the court adequately and correctly covered all the issues in the case, including contributory negligence and assumption of risk, both of which were pleaded and vigor-

ously urged by defendant. A special charge on contributory negligence requested by defendant was also given. No omissions were noted by defendant at the close of the general charge.

Counsel for appellant have called attention to the recent case of *Canter* v. *Valley,* 168 Ohio St., 590, 157 N. E. (2d), 113, wherein conduct of a plaintiff in some respects resembling that of this appellee was held to be contributory negligence as a matter of law.

However, there are some important distinctions. In that case plaintiff was employed simply to pile up debris in a room; there were no instructions and no need to carry the debris out any door; plaintiff nevertheless decided to get and use a bushel basket of her own, to put the debris therein, and to carry it out through a door; wearing high heels, and being unable to see an obstruction ahead of her on account of the basket, she took no precaution whatever, even by feeling with her foot, to determine what was ahead; and, perhaps most important of all, the defendant in that case did not open a door or otherwise indicate or suggest that it was safe, or proper, or necessary, to go out the door.

In the present case there was evidence upon which the jury might have found plaintiff guilty of contributory negligence. But there was also other evidence tending to explain his conduct. It was a nice question, an appropriate jury question.

It is our view that the evidence shown by the record, which has been briefly outlined, justified the submission of the various issues in the case to the jury, and that the evidence in support of plaintiff's case is sufficient to sustain the verdict.

These conclusions are responsive to the first, third and fifth assignments of error, which pertain to the overruling of defendant's motions to dismiss and for judgment notwithstanding the verdict.

The second assignment of error is that "the court erred in refusing to allow defendant to cross-examine plaintiff in regard to statements contained in a written statement admittedly signed by the plaintiff."

The written statement in question was marked as defendant's exhibit A for identification and is attached to the bill of exceptions, but was not admitted in evidence. It consists of

three sheets of paper, written in longhand, dated December 31, 1953, at Mercy Hospital, Springfield, Ohio. Each of the three pages is signed by the plaintiff, William W. Dalie, as he ultimately admitted. Alongside two apparent corrections in the statement are printed in pen and ink the initials "W.W.D."

Immediately above plaintiff's signature on the third page appears the following language: "Have you read the above two and a half page statement, *Yes*. Is it true as stated ....." The answer, "yes," in response to the first question, is in a handwriting different from the rest of the statement and appears to correspond to plaintiff's signature. As indicated above, the final question is unanswered.

No signature of any witness appears upon the statement. Plaintiff made reference to an "insurance man" having interviewed him. Defendant's counsel stated that the name of the interviewer was unknown to them.

Counsel for defendant made use of this statement in cross-examination of the plaintiff, apparently endeavoring to lay the foundation for impeachment. The particular subject of inquiry was whether when plaintiff fell he was carrying the first of three baskets of chickens from defendant's premises to plaintiff's truck, as he testified at the trial, or whether it was the third basket after he had previously carried out two others, as recited in the statement.

If he had previously carried two baskets out this same door and over the step complained of, such fact could have an important bearing upon the defenses of contributory negligence and assumption of risk. It should be observed in passing that the account attributed to plaintiff in the statement does not specify through which door he supposedly carried the first two baskets.

It is true, as pointed out by defendant, that the court stated early in the cross-examination that the statement itself could be introduced as a whole, but admonished counsel not to read excerpts. It appears from the record that the court had not at that time examined the exhibit and indicated that he was not yet fully familiar with its contents. After examining the exhibit the court said:

"I think the court will permit you to again hand the witness

that exhibit and ask him—so there will be no question about it—if those are his signatures and if he read the statement to which they are affixed, and see what his answer is. And your conduct will be governed from there on."

Following this comment, counsel for defendant made no effort to quote directly from the statement in framing his further questions. Direct quotation from a claimed prior inconsistent statement is generally considered advisable and proper in laying the foundation for impeachment.

However, that is not an absolute requirement. The questions asked of plaintiff embodied the substance of that portion of the written statement under scrutiny. Plaintiff replied that he did not remember so stating. Thus the necessary foundation for impeachment was laid. 42 Ohio Jurisprudence, 408, 412 and 413, Witnesses, Sections 398, 401 and 402.

When defendant offered the exhibit in evidence it was excluded, not for failure to lay the ground for impeachment, but for lack of adequate authentication of the statement itself.

While refusal to admit the exhibit in evidence is not made an assignment of error, it may be observed that admission or exclusion for this cause was within the sound discretion of the court. Statements signed by a witness are sometimes admitted and sometimes excluded, apparently depending upon circumstances. See 42 Ohio Jurisprudence, 416, Witnesses, Section 406. Here the statement itself was not written by the plaintiff. Although he signed it, apparently initialled certain corrections, and indicated that he had read it, he claimed to have been in some discomfort at the time, and he did not answer the question "Is it true as stated?"

The court was obviously troubled by the failure to identify and produce as a witness the man who wrote this statement. He may well have felt that justice required that such person should be submitted to cross-examination.

The reluctance of defendant to produce the "insurance man" is understandable. We can also appreciate the position of the court in excluding the exhibit without further authentication, whether offered by way of impeachment or as a declaration or admission against interest.

We find no abuse of discretion and no error prejudicial to

the defendant in excluding the statement or in the rulings upon the scope and character of the cross-examination.

Defendant's fourth assignment of error is concerned with the refusal of the court to submit to the jury special interrogatory No. 4 requested by defendant, which reads as follows:

"Was there available and accessible at the time the plaintiff stepped through the north door, another door through which the plaintiff could have carried the basket of chickens?"

In support of this assignment defendant invokes the provisions of Section 2315.16, Revised Code, which requires the court upon request to "instruct the jurors, if they render a general or special verdict, specially to find upon particular material allegations contained in the pleadings controverted by an adverse party."

We find in the pleadings no reference to the number of available and accessible doors. Neither, for that matter, was any such issue raised in the evidence. It appeared to be generally conceded by everyone that there were two such doors facing west and fronting upon North Locust Street.

Under the state of the pleadings the court was not required to submit special interrogatory No. 4.

The sixth and final assignment of error is the usual and general one that the verdict and judgment are contrary to law and manifestly against the weight of the evidence. This raises no additional questions for our consideration.

No error prejudicial to the defendant appearing in the record, the judgment is affirmed.

*Judgment affirmed.*

WISEMAN, P. J., and KERNS, J., concur.